AMOS E. CURRY, Respondent, *v.* NORWOOD ELECTRIC LIGHT AND POWER COMPANY, Appellant.

County Court, St. Lawrence County, June 25, 1925.

**Corporations — transportation corporations — action for damages for failure to furnish motion picture house with sufficient power to operate movie — admission fees totalling forty-nine dollars returned by plaintiff to patrons — closing of gates above dam by upper owner, causing interruption of electric current, not act of God — defendant liable on implied contract to furnish electric power — plaintiff not bound by rule to effect that defendant did not guarantee continuous service — damages — verdict of jury for twenty dollars proper — costs — justice of peace without power to grant costs in excess of ten dollars under Justice Court Act, § 317, where judgment does not exceed fifty dollars.**

Defendant, an electric light and power company, furnishing, under an implied contract, electric power and current to the plaintiff for use in his motion picture house, is liable in an action for damages for failure to furnish sufficient power with which to operate a show, where it appears that an interruption of service was caused by the closing of the water gates in the flumes of the users of an upper water power, and that plaintiff, as a result, returned forty-nine dollars to patrons who had purchased tickets. The closing of the gates above defendant's dam was neither an act of God nor an inevitable accident, but rather arose from a human agency which defendant might have anticipated.

Plaintiff was not bound by defendant's rules to the effect that it did not guarantee continuous service, in the absence of evidence that said rules were part of plaintiff's contract and that he had no notice of such limitation of service.

The verdict of the jury, giving plaintiff damages in the sum of twenty dollars should not be set aside, since the jury had the right to take into consideration the fact that while plaintiff returned forty-nine dollars to its patrons by reason of inability to conduct the show, it did not have to pay for heat and janitor service.

However, the judgment of the justice of the peace in plaintiff's favor for thirty dollars and five cents is improper and should be modified so that the costs will not exceed ten dollars, since the provisions of section 317 of the Justice's Court Act limit the costs to the prevailing party to ten dollars where the judgment is less than fifty dollars.

APPEAL by the defendant, an electric light and power company, from a judgment in favor of the plaintiff for the alleged failure of the defendant to furnish sufficient electric current.

*Willis J. Fletcher* [*George H. Bowers* of counsel], for the appellant.

*Fred J. Flanagan,* for the respondent.

DOLAN, J.:

This action is brought to recover damages for the alleged failure of the defendant to furnish sufficient electric current to the plaintiff to operate certain machinery in his motion picture houses. It was admitted that the plaintiff owned and operated two motion picture houses, one in the village of Norwood, N. Y., and the other in the village of Norfolk, N. Y. On the 24th day of December, 1924, the plaintiff had advertised and arranged to show to his patrons in both of said motion picture houses an exhibition on the said evening of December twenty-fourth, and that he actually had sold tickets to persons who patronized his theatres on that night and that he gave back to said patrons the admission fee which he had already collected. It was further admitted that the defendant was an electric light and power corporation with its principal place of business in the village of Norwood, N. Y., and having a franchise in the public highways and streets of each of said villages of Norwood and Norfolk and that it maintained its poles, wires and equipment with which to transmit electricity in said public highways and streets and that the plaintiff's theatres were within 100 feet from the main line of defendant's wires in said public streets in both of said villages and that the defendant was at the time in question a public service corporation and had the exclusive right to transmit electric power in both of the villages named; that the defendant had for some time prior to December 24, 1924, furnished under an implied contract electric power and current to the plaintiff for his use in said motion picture houses. There was no written contract between the parties but the plaintiff contends that the defendant was obligated to furnish electric power and current under its general system of business as a public service

corporation and that it did not furnish sufficient electric current and power on the said 24th day of December, 1924, to operate the motion pictures of the plaintiff and that the plaintiff was damaged thereby in the sum of forty-nine dollars. The jury has found in favor of the plaintiff and against the defendant for the sum of twenty dollars. The defendant produced its electric current and power on the Racquette river, using both water and steam power for producing electricity. Above the dam used by the defendant was another dam which was used by a corporation which manufactured paper. Some time during the afternoon of the 24th day of December, 1924, the paper mill closed and shut down its gates which apparently lessened the amount of water below its dam so that there was not sufficient water in the river at the dam of the defendant to operate adequately the plant of the defendant and it was compelled to resort to steam power which evidently was not sufficient to give ample electricity to satisfactorily show the pictures of the plaintiff in his motion picture houses.

The question presented is whether the defendant, a public service corporation, was compelled to furnish continuous service to the plaintiff and to its other patrons and whether its failure to do so is a basis of an action for damages against the defendant. The alleged interruption of the service actually caused the plaintiff damages. Are the facts sufficient to relieve the defendant? I think not. No cases have been cited by the counsel for either party nor have I been able to find any which are directly in point. The courts have frequently passed upon the liability of common carriers and their obligations to the public and have decided that a common carrier may be excused from delivering passengers to their point of destination according to advertised schedule on account of an act of God or inevitable accident. (*Cormack* v. *N. Y., N. H. & H. R. R. Co.,* 196 N. Y. 442.)

But whether the same rule applies to a light and power corporation to deliver electric current to its patrons seems uncertain. Such rule, however, would appear to be reasonable. Nevertheless, the interruption of service in this case was not due to an act of God or an inevitable accident but rather to human agency. The users of the upper water power closed the water gates in their flumes and consequently sufficient water did not pass over the defendant's dam to operate its plant. Should the defendant have anticipated or expected such a situation to arise? Was it such an occurrence as a man of prudence and foresight might have contemplated? The jury by its verdict found that the defendant might have anticipated the result and should have made provision therefor by either making an arrangement with the power owners

above or having a steam plant ready for the generation of power in case of emergency. Therefore, I do not care to disturb the finding of the jury in this respect for I believe it is the law.

The defendant argues as a further defense that it posted rules and regulations to the effect that it did not guarantee continuous service to its patrons. There is no evidence that these rules and regulations were part of the contract. Quite the contrary. The plaintiff contends that he had no notice of such limitation of service. The fact that these rules were posted in defendant's plant without being brought to the attention of the plaintiff is not sufficient to bind the plaintiff. A rule or regulation to be of binding effect must be of such character and nature and give such publicity as to put a person of ordinary knowledge upon his guard. There is another reason also, in my opinion, why the defendant cannot be relieved from liability by reason of the publishing and posting of rules and regulations to the effect that it is not obligated to furnish continuous service. The defendant has been granted certain privileges and franchises. It is a public service corporation. In return for the favors granted, it should be compelled to give service when the public desire it. It should not be optional with the defendant to decide whether the service is continuous or at what time or in what manner it shall serve the public. To be sure the defendant may make contracts with its patrons in which it may specify the kind of service it will render but such was not the case in this action.

The question also has been raised as to the amount of the judgment. The defendant argues that there was no basis for the verdict of the jury and that the judgment should have been for no cause of action or the amount demanded by the plaintiff in his complaint. It is true that there was no evidence that the plaintiff suffered damages in the sum of twenty dollars. The only evidence offered as to the damages of the plaintiff was the amount of money which he received from his patrons and which he paid back to them when he found he was unable to operate the motion picture shows in his theatres. However, I do not think that was a true measure of damages. If the defendant had operated his theatres he would have had to pay for the amount of electricity which he used and which would naturally be deducted from the admissions. Possibly, he would have had to pay for extra heat and janitor service. Therefore, I am of the opinion that the jury had a right to take into consideration such facts and determine for themselves the amount of the plaintiff's damage.

The defendant also raised the question as to the amount of costs which were taxed against it. The justice of the peace gave a judgment for thirty dollars and five cents, including costs, and he

had no authority for granting judgment for that amount. Section 317 of the Justice's Court Act provides that the costs of the prevailing party shall not exceed ten dollars unless the judgment is for fifty dollars or more. Consequently, the judgment should be modified so that the justice's costs will not exceed ten dollars, and as so modified the judgment of the Justice's Court is affirmed.

An order and judgment may be prepared accordingly.