WILLIAM J. EMBLING, Respondent, v. THE CHURCHVILLE OIL AND NATURAL GAS COMPANY, Appellant.

Fourth Department, November 20, 1929.

*Edward N. Heath,* for the appellant.

*Hampton H. Halsey,* for the respondent.

CROSBY, J. Upon a former appeal a judgment for plaintiff herein was reversed by this court upon the ground that the finding of the jury to the effect that the heating of the cellar for the storage of potatoes in bulk was within the contemplation of the contract between the parties, was contrary to the weight of the evidence (226 App. Div. 849).

In consideration of the right to drill a gas well upon plaintiff's farm the defendant agreed, in writing, to pay to plaintiff $100 a year rental and also to furnish plaintiff gas to heat and light his residence at ten cents per thousand feet. Several years after the contract was entered into plaintiff gave to defendant a written stipulation to reduce the rental from $100 to $25 a year. This writing discloses on its face no consideration paid, suffered or promised by defendant.

The present record, unlike the one upon the former appeal, discloses that just prior to the giving by plaintiff of the writing reducing the rent, defendant had threatened to " pull the well " unless plaintiff would consent to a reduction of the rent. Plaintiff had a talk with Mr. Bernard, who was the president of defendant and the owner of all its capital stock. In that conversation plaintiff, in substance, told Bernard that he had no other means of heating his house, that it would be a hardship to lose the gas. Plaintiff testified: " I told him that we liked the gas and that I didn't want him to pull the well. We wanted to keep the gas so we could use it to heat our house and to keep our cellars from freezing. * * * I told him that we were using the gas to heat our cellar to keep our potatoes and stuff from freezing," etc. Mr. Bruton, a former manager of the defendant, testified that he heard the conversation between plaintiff and Bernard, and that plaintiff said that " he had no other way to heat his house or of heating his cellar; that he had to use it for heating of the house and the cellar to protect the produce," etc.

There is also proof that a Mr. Keith, who was the local manager of defendant, had been in plaintiff's cellar and seen potatoes stored there.

The written contract is somewhat ambiguous. The conversations and conduct of the parties as above outlined throw light upon the interpretation which the parties themselves placed upon the

contract and create a fair inference that the parties had in contemplation that plaintiff had potatoes in his cellar that would be destroyed in case defendant failed to furnish him gas, and that it was the duty of the defendant to furnish gas to heat plaintiff's cellar. The proof shows that defendant not only did not furnish the gas to plaintiff, and did not even permit the gas to flow naturally to plaintiff's residence, but by a system of check valves and so-called "pushers" drew the gas away from plaintiff's residence so as to force it up to the near-by village where a much higher price was paid for gas than plaintiff was paying.

The present record has fairly supplied the defects in the former record and the plaintiff is entitled to have this judgment affirmed.

The judgment and order should be affirmed, with costs.

All concur, except SEARS, P. J., and THOMPSON, J., who dissent and vote for reversal on the facts. Present — SEARS, P. J., TAYLOR, EDGCOMB, THOMPSON and CROSBY, JJ.

Judgment and order affirmed, with costs.