Benjamin Brenner, J.
Plaintiff claims that the cutoff of electrical service by the defendant was in breach of its contract and an unreasonable failure by the utility to supply the service to plaintiff’s restaurant, a place of public accommodation, in violation of statute.
On the credible evidence, I find that no firm offer to pay both the security and arrears of unpaid bills was made on January 19, 1966, the cutoff date. Moreover, I do not find any violation by the defendant of section 65 of the Public Service Law, as the phrase therein, “unreasonable prejudice or disadvantage in any respect whatsoever”, is referable to discriminatory practice, that is, an unreasonable prejudice or disadvantage to one person, corporation or locality as against another (Matter of City Ice & Fuel Co. v. Public Serv. Comm., 260 App. Div. 537; Matter of O’Sullivan v. Feinberg, 201 Misc. 658, 662).
The real issue then is whether the method employed and the circumstances in which the cutoff occurred may, upon the evidence in this case, be regarded as a breach of the agreement for safe service; that is to say, whether, though the defendant was clearly entitled to cut off the service for lack of payment, it was permissible for it to do so without giving specific notice of the precise date for the cutoff, particularly in light of the fact that *88 the defendant had sent three prior notices of its intent to cut off service without following through, thus allegedly lulling the plaintiff into a false feeling of security. (The cutoff occurred during a business day and in the presence of customers and others upon whose goodwill and credit plaintiff relied for the conduct of its restaurant.)
The language of the written notices which defendant had sent and which were received by plaintiff specified several weeks’ notification in each case and was more than sufficient to satisfy the statute for the giving of a five-day notice for payment prior to cutoff (Transportation Corporations Law, § 15). They do not appear to give rise to an inference that the customer would be further alerted to a precise date for the cutoff. In fact, the reference to final date for payment is to a date following which commencement of proceedings or turnoff of service would occur in the event of default.
Since the notices sufficiently alerted plaintiff to the imminence of the cutoff following specified date of nonpayment, it cannot be said that the final notice of December 20,1965, requiring payment by January 4,1966, was insufficient notification of the actual cutoff which took place on January 19,1966. Even if the manner and method of the cutoff appear harsh for a going concern, it was nevertheless an enforcement remedy to which the defendant was entitled both under the contract and the provisions of sections 13 and 15 of the Transportation Corporations Law.
There seems to be no support for the proposition, urged by the plaintiff, that a place of public accommodation requires any special method of enforcement of contractual rights or is entitled to a precise, clear and unequivocal warning of a specified date for the cutoff following continuous failure to make payment of utility bills. All the statutes in question require is the five-day written notice which, undeniably, was repeatedly given. And, no decisional law has been cited to substantiate the theory that a place of public accommodation must be treated any differently than is any other business customer, or that the cutoff may not be made during business hours. Indeed, it seems to me that a cutoff of electricity in the case of a residential customer would potentially be more onerous and hazardous than that of a business customer, even in the case of a business involving “ public accommodation. ’ ’
Plaintiff cites many cases involving equitable estoppel and waiver, all of which point to the need for proof of reliance-to-detriment, extension of time prior to time for performance, and assent to new terms for performance. All of these are wholly irrelevant and inappropriate to the facts at hand. It also cites *89 the case of Thomson v. Poor (147 N. Y. 402) to the effect that where a party entitled to performance of a condition or obligation acts in such manner as to indicate that he is not insisting upon performance, he is deemed to have waived it; it being the plaintiff’s theory that by failing to follow through on the many notices for payment, until some 15 days following the date of payment demanded in the last notice of December 20, 1965, defendant’s conduct constituted a waiver of its right to enforce its cutoff remedy. That case is also inapplicable here for it is one in which strict performance was considered to have been waived because of conduct which was inconsistent with the right thereto. Defendant’s conduct here may not be so construed. On the contrary, the repeated demands for the arrears were consistent with urgent insistence upon, rather than a waiver of, payment and continued reservation of its remedy to cutoff (People ex rel. Kennedy v. Manhattan Gas Light Co., 45 Barb. 136).
There is additionally insufficient proof of damage (other than the nominal sum of $500 involving spoilage during the several hours of stoppage). Plaintiff urges a loss of value of the business as a measure of damages directly flowing from the defendant’s claimed breach, in the sum of $50,000. Ordinarily, the measure of damages is the loss of profits, as the direct loss contemplated by the contracting parties in the event of breach (Curry v. Norwood Elec. Light & Power Co., 125 Misc. 279). In any case, since the plaintiff was forced to file a petition in bankruptcy under chapter XI of the Bankruptcy Law less than three months following the cutoff, the claimed loss of value would appear to have no relevancy. In fact, the schedules filed in that proceeding indicated liabilities twice that of the assets, which would tend to disprove value prior to and following the cutoff. Assuming that the formula testified to for decreased value is at all probative (according to plaintiff’s testimony, where rent and fixed overhead is less than 12% of gross income, there is a loss of value of $25,000 for each $1,000 of decreased gross weekly income), the evidence as to this method of calculation is unsupported and wholly unpersuasive. What is more, evidence is lacking from which an inference may be drawn that such claimed loss of value in the event of cutoff was fairly within the contemplation of the parties as the consequence of an improper cutoff (cf. Embling v. Churchville Oil & Natural Gas Co., 227 App. Div. 217, affd. 254 N. Y. 589).
The cutoff, therefore, was not in violation of contract, illegal, improper, or productive of the claimed damage. As I find no merit in plaintiff’s cause, the defendant is entitled to judgment, without costs, to be entered on notice.