Charles KAPAR, Appellant,

v.

KUWAIT AIRWAYS
CORPORATION, et al.

No. 87–7160.

United States Court of Appeals,
District of Columbia Circuit.

Argued March 25, 1988.

Decided May 6, 1988.

As Amended June 21, 1988.

Marc Fiedler, with whom Roger C. Johnson, Washington, D.C., was on the brief, for appellant.

Michael J. Holland, New York City, with whom Thomas J. Whalen and Moffett B. Roller, Washington, D.C., were on the brief, for appellee Kuwait Airways Corp.

James A. Gallagher, Jr., with whom David O'Brien, Peter F. Vetro, Mineola, N.Y., and Richard W. Galiher, Jr., Washington, D.C., were on the brief, for appellee Pan American World Airways, Inc.

Patrick Kavanaugh was on the brief for appellee Middle East Airlines Airliban, S.A. L. Stephen A. Trimble, Washington, D.C., also entered an appearance for appellee Middle East Airlines Airliban, S.A.L.

Bert W. Rein and James M. Johnstone, Washington, D.C., were on the brief for amicus curiae Intern. Air Transport Ass'n.

Before EDWARDS, SILBERMAN and WILLIAMS, Circuit Judges.

Opinion for the Court filed by Circuit Judge HARRY T. EDWARDS.

HARRY T. EDWARDS, Circuit Judge:

The appellant, Charles Kapar, initiated an action in District Court seeking damages from Kuwait Airways Corporation ("KAC"), Pan American World Airways, Inc. ("Pan Am") and Middle East Airlines Airliban, S.A.L. ("MEA") for personal injuries he sustained when a KAC flight on which he was a passenger was hijacked. The District Court dismissed Kapar's claims against KAC and Pan Am, ruling that it lacked subject matter jurisdiction over both carriers under Article 28(1) of the Warsaw Convention ("Convention").[1] The trial court dismissed Kapar's claim against MEA because personal jurisdiction had not been established. *Kapar v. Kuwait Airways Corp.*, 663 F.Supp. 1065 (D.D.C. 1987).[2]

We find no error in the District Court's interpretation of Article 28(1). Furthermore, we find no merit in Kapar's alternative construction of this provision or his argument that he is entitled to bring an independent admiralty claim against KAC. We therefore affirm the dismissal of all claims against KAC and Pan Am. We remand the claim against MEA, however, because the District Court erred in dismissing MEA *sua sponte* for lack of personal jurisdiction.

## I. BACKGROUND

In 1984, Kapar was employed by the Agency for International Development ("AID"). Although stationed in Karachi, Pakistan, he provided auditing services at AID missions throughout the Middle East and Southeast Asia. After completing an assignment in Sanaa, Yemen Arab Republic, he purchased an airline ticket to Karachi from Marib Travel and Tourism, an authorized Pan Am sales agent.

Kapar's ticket, which was issued on Pan Am ticket stock, was for travel on KAC flight #782 from Sanaa to Kuwait City, Kuwait, on December 3, 1984, and then on KAC flight #221 from Kuwait City to Karachi on the same day. This arrangement was not unusual. Most of the world's airlines—including Pan Am and KAC—routinely sell carriage over each other's routes on a commission basis, pursuant to standard interline traffic agreements promulgated by the International Air Transport Association ("IATA"). *See Eck v. United Arab Airlines*, 360 F.2d 804, 813 & n. 22 (2d Cir.1966). Under the terms of the Pan Am–KAC interline agreement, Kapar's payment was routed to a clearinghouse in New York, where settlement was made.

Kapar's trip on KAC flight #782 from Sanaa to Kuwait City was uneventful. KAC flight #221 was hijacked, however, after completing a refueling stop in Dubai, United Arab Emirates. The hijackers ap-

---

1. Convention for the Unification of Certain Rules Relating to International Transportation by Air, Oct. 12, 1929, 49 Stat. 3000 (1934), T.S. No. 876, 137 L.N.T.S. 11, *reprinted in* 49 U.S.C. App. § 1502 note (1982).

2. In addition, the District Court dismissed Kapar's claim against the International Air Transport Association. Kapar no longer appeals this aspect of the trial court's decision.

parently transferred to KAC flight # 221 in Dubai from a MEA flight that had arrived from Beirut, Lebanon. The hijackers forced KAC flight # 221 to land in Teheran, Iran, on December 4, 1984, where Kapar was tortured and beaten severely.

Following his return to the United States, Kapar filed suit in the District Court, raising various tort claims against the aforementioned defendants. KAC moved to dismiss the claims against it, arguing that it was not amenable to suit in the United States under Article 28(1) of the Convention.[3] Article 28(1) provides that an action for damages arising out of international air travel "must be brought" in one of four countries: (1) the carrier's domicile; (2) the carrier's principal place of business; (3) the country where the carrier has a place of business through which the contract of carriage was made; or (4) the place of destination.[4]

Because KAC is based in Kuwait and the ultimate destination of KAC flight # 221 was in Pakistan, the District Court rejected Kapar's contention that the United States could serve as a proper forum under the first, second or fourth clauses of Article 28(1). With respect to the third clause, the court found implausible Kapar's "complicated theory," which was based on the fact that his ticket was electronically confirmed in New York and that as a federal employee he was allegedly obliged to buy his ticket from an American carrier. 663 F.Supp. at 1067. Consequently, the court granted KAC's motion to dismiss.

Having reached this conclusion, the District Court determined that it also lacked subject matter jurisdiction over Pan Am. The court reasoned that Pan Am, as KAC's agent, was fully entitled to KAC's Convention defenses. *Id.* at 1068.

Furthermore, the court rejected Kapar's contention that he could avoid the Convention's jurisdictional limitations by bringing a separate admiralty cause of action against KAC. The court held that the remedies provided in the Convention provided Kapar's exclusive source of relief.[5] Finally, the court, *sua sponte*, dismissed Kapar's claim against MEA for lack of personal jurisdiction.

Kapar seeks review of the District Court's decision pursuant to 28 U.S.C. § 1291 (1982).

## II. Analysis

### A. Jurisdiction Over Pan Am as "Carrier"

█ At the outset, we emphasize that Kapar no longer claims that KAC is amenable to suit in the United States under Article 28(1).[6] Kapar also has forsaken his concomitant claim that Pan Am is liable for its role as agent both for him and for KAC. Instead, Kapar devotes his appellate energies to arguing that Pan Am, a United States-based corporation, should be deemed a "carrier" under the facts of this case, such that it would be subject to suit in this

3. The Convention applies "to all international transportation of persons, baggage, or goods performed by aircraft for hire." Art. 1(1). In his amended complaint, Kapar conceded that, at the time of the hijacking, he was engaged in "international transportation" as that term is defined in Article 1(2). Amended Complaint for Negligence ¶ 8, *reprinted in* Appendix of Appellant at 3–4; *see also* Brief of Appellant at 6.

4. Article 28(1) states in full:
An action for damages must be brought, at the option of the plaintiff, in the territory of one of the High Contracting Parties, either before the court of the domicile of the carrier or of his principal place of business, or where he has a place of business through which the contract has been made, or before the court at the place of destination.

5. The Convention creates a presumption of carrier liability for injury, death or property damage suffered by passengers during international air transportation. In Article 22, however, the Convention expressly limits the amount that passengers may recover when suing air carriers for such damage. *See Block v. Compagnie Nationale Air France,* 386 F.2d 323, 327 (5th Cir.1967), *cert. denied,* 392 U.S. 905, 88 S.Ct. 2053, 20 L.Ed.2d 1363 (1968).

6. This argument does not appear explicitly in Kapar's brief to this court, and it cannot be resuscitated by a passing reference at oral argument. In any event, we find this now-abandoned claim lacking in merit.

country under the first two bases of jurisdiction in Article 28(1).[7]

■ This contention is without merit. Although the term "carrier" is not defined in the Convention, the manner in which it is employed, particularly in the chapter titled "Liability of the Carrier," makes clear that the Convention's drafters were referring only to those airlines that actually transport passengers or baggage ("actual carriers"). *See Air France v. Saks,* 470 U.S. 392, 396–97, 105 S.Ct. 1338, 1340–41, 84 L.Ed.2d 286 (1985) ("The analysis must begin ... with the text of the treaty and the context in which the written words are used."). In Article 17, for example, the "carrier" is deemed liable for death or bodily injury "if the accident which caused the damage so sustained *took place on board the aircraft or in the course of any of the operations of embarking or disembarking*" (emphasis added).[8] Likewise, in Article 18(1), the "carrier" is deemed liable for damage to any checked baggage or other goods "if the occurrence which caused the damage so sustained *took place during the transportation by air*" (emphasis added).[9] In Article 30, moreover, the drafters even precluded the possibility that the actual carrier for one leg of a

scheduled multi-leg trip could be held liable for injuries suffered on another airline during a different leg of the trip. When "successive carriers" provide transportation of this sort, a passenger "can take action *only against the carrier who performed the transportation during which the accident ... occurred*" (emphasis added).[10] In light of this provision, it cannot reasonably be concluded that the drafters intended an airline that merely issues a ticket to face potential liability as "carrier." *See Briscoe v. Compagnie Nationale Air France,* 290 F.Supp. 863 (S.D.N.Y.1968).

■ Our understanding of the term "carrier," as utilized in the Convention, comports with the well-settled principle that an airline that issues a ticket for carriage on another airline acts only as the *agent* for the actual carrier. *See, e.g., Block v. Compagnie Nationale Air France,* 386 F.2d 323, 332–34 (5th Cir. 1967), *cert. denied,* 392 U.S. 905, 88 S.Ct. 2053, 20 L.Ed.2d 1363 (1968); *Eck,* 360 F.2d at 814. This precedent reflects the longstanding practice and understanding of the world's international air carriers, whose standard IATA interline agreement provides that an issuing airline "shall be deemed to act only as an Agent of the

---

**7.** We reject Pan Am's argument that we are unable to consider this claim on appeal. Although it is true that Kapar did not raise the Pan Am-as-carrier contention in his amended complaint, Pan Am concedes that it was advanced by Kapar in memoranda of law that were submitted to the District Court. *See* Brief of Appellee Pan Am at 4, 9. It cannot be said, therefore, that Pan Am was "prejudiced on the merits by a change in legal theory." *Hanson v. Hoffmann,* 628 F.2d 42, 53 n. 11 (D.C.Cir.1980); *see also Fidelity & Casualty Co. v. Reserve Ins. Co.,* 596 F.2d 914, 918 (9th Cir.1979).

**8.** Article 17 states in full:
The carrier shall be liable for damage sustained in the event of the death or wounding of a passenger or any other bodily injury suffered by a passenger, if the accident which caused the damage so sustained took place on board the aircraft or in the course of any of the operations of embarking or disembarking. Neither Pan Am nor KAC argues that Kapar's injuries were not the product of an "accident," as that term is used in Article 17. *See Saks,* 470 U.S. at 405, 105 S.Ct. at 1345 ("lower courts in this country have interpreted Article 17 broadly enough to encompass torts committed by terror-

ists") (citing, *inter alia, Evangelinos v. Trans World Airlines,* 550 F.2d 152 (3d Cir.1977) (en banc)).

**9.** Article 18(1) states in full:
The carrier shall be liable for damage sustained in the event of the destruction or loss of, or of damage to, any checked baggage or any goods, if the occurrence which caused the damage so sustained took place during the transportation by air.

**10.** Article 30 states in relevant part:
(1) In the case of transportation to be performed by various successive carriers ..., each carrier who accepts passengers, baggage or goods shall be subject to the rules set out in this convention, and shall be deemed to be one of the contracting parties to the contract of transportation insofar as the contract deals with that part of the transportation which is performed under his supervision.
(2) In the case of transportation of this nature, the passenger or his representative can take action only against the carrier who performed the transportation during which the accident or the delay occurred....

carrying airline(s)." Art. VII, Interline Traffic Agreement—Passenger, *reprinted in* Appendix for Appellee KAC at 25.[11] Kapar's ticket, moreover, expressly states that the "carrier issuing a ticket for carriage over the lines of another air carrier does so only as its agent." *Reprinted in* Appendix of Appellee KAC at 15.[12] That the Convention's drafters did not account for these agency arrangements is due to the simple fact that, in 1929, the commercial airline industry was in its infancy and only a few interline agreements were in place. *Eck*, 360 F.2d at 812–13.[13]

Finally, one must bear in mind that, by including Article 28(1), the drafters intended to "restrict[ ] the forums in which damage actions may be brought in order to foreclose the possibility of suit in the courts of a nation that has no substantial connection with an accident." *Eck*, 360 F.2d at 808; *see also In re Air Crash Disaster Near New Orleans, La.*, 821 F.2d 1147, 1161 (5th Cir.1987) (en banc). Because the nexus with the United States in this case can only be described as "slight ... and remote," *Kapar*, 663 F.Supp. at 1068 n. 3, subjecting Pan Am to suit in the District Court would be inconsistent with the underlying purpose of Article 28(1).

## B. *Admiralty Jurisdiction Over KAC*

■ Kapar believes that he may avoid the jurisdictional limitations of the Convention by bringing an independent admiralty claim against KAC under 28 U.S.C. § 1333 (1982). The District Court rejected this contention, holding that an admiralty cause of action is "unavailing where the United States is not an appropriate forum under the Warsaw Convention." *Kapar*, 663 F.Supp. at 1069.

We agree. As a treaty of the United States, the Convention "is equal in stature and force as any other domestic federal law." *In re Air Crash Disaster*, 821 F.2d at 1161 n. 19. Thus, even assuming that an admiralty claim could be maintained in this instance in the absence of the Convention,[14] admiralty cases involving international air transportation *must* satisfy the Convention's requirements in order to be cognizable in United States courts. Accordingly, Article 28(1) "operates as an absolute bar to federal jurisdiction in cases falling outside its terms." *Gayda v. LOT Polish Airlines*, 702 F.2d 424, 425 (2d Cir. 1983) (per curiam). "Only if ... treaty jurisdiction [is established] need we answer domestic jurisdiction and venue questions." *Smith v. Canadian Pacific Airways*, 452 F.2d 798, 802 (2d Cir.1971).[15]

Here, Kapar no longer contends that KAC is subject to "jurisdiction in the international or treaty sense." *In re Air Crash Disaster*, 821 F.2d at 1161 n. 21. As a result, our inquiry is at an end. We need

---

11. We note that an agency relationship would likely exist between the issuing airline and the actual carrier even in the absence of a formal interline agreement. *See Eck*, 360 F.2d at 814 n. 23.

12. We reject Kapar's argument that Pan Am, whose name and address allegedly appear on the ticket, must be considered a "carrier" because Article 3(1)(d) requires the "carrier" to include such information on its ticket.

13. For these reasons, the term "contract," as used in the Convention, refers to a passenger's travel arrangements on an actual carrier, not the insignificant relationship between the passenger and an issuing airline. *See Block*, 386 F.2d at 334 ("the airline-passenger contract exists [between the passenger and the actual carrier] when the negotiator is only a nominal party, acting on behalf of the passenger[ ]"); *Orent v. Sabena Belgian World Airlines*, 8 Av.Cas. (CCH) 17,273 (E.D.N.Y.1962); *Riediger v. Trans World Airlines*, 6 Av.Cas. (CCH) 17,315 (N.Y.Sup.Ct. 1959); *cf. Seguros Banvenez, S.A. v. S/S Oliver Drescher*, 761 F.2d 855, 860 (2d Cir.1985) ("When an agent makes a contract for a disclosed principal, it becomes neither a party to the contract nor liable for the performance of the contract.").

14. The test for establishing admiralty jurisdiction in aviation cases enunciated in *Executive Jet Aviation, Inc. v. City of Cleveland*, 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972), would be difficult to satisfy in the instant case, not the least because the hijacking was "only fortuitously and incidentally connected to navigable waters." *Id.* at 273.

15. Article 28(1) must be read in conjunction with Article 24(1), which provides that an action for damages sustained in international air transportation, "however founded, can only be brought subject to the conditions and limits set out in this convention."

not consider whether an admiralty claim against KAC could be made out under 28 U.S.C. § 1333. The Convention's liability limitation provisions would be too easily circumvented if a passenger could avoid the forum-restrictions of Article 28(1) simply by bringing a separate action under 28 U.S.C. § 1333.[16]

### C. *Personal Jurisdiction Over MEA*

■ On May 7, 1986, MEA filed a motion to dismiss for lack of personal jurisdiction. Three weeks later, MEA voluntarily withdrew this motion and Kapar subsequently subjected MEA to discovery. Nonetheless, the District Court, *sua sponte*, dismissed Kapar's claim against MEA for want of personal jurisdiction.

This was error. "[B]ecause personal jurisdiction may be conferred by consent of the parties, expressly or by failure to object, a court may not *sua sponte* dismiss for want of personal jurisdiction, at least where a defendant has entered an appearance...." *Zelson v. Thomforde*, 412 F.2d 56, 59 (3d Cir.1969) (per curiam) (citations omitted); *see also Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1202 (10th Cir.1986) (per curiam).

On remand, MEA may renew its motion to dismiss for lack of personal jurisdiction, request transfer to another venue or move to dismiss for lack of subject matter jurisdiction. On the record before us, we cannot determine whether the District Court lacked subject matter jurisdiction over MEA. *See Reed v. Wiser*, 555 F.2d 1079 (2d Cir.), *cert. denied*, 434 U.S. 922, 98 S.Ct. 399, 54 L.Ed.2d 279 (1977).

### CONCLUSION

For the reasons stated above, the District Court's decision is affirmed with respect to KAC and Pan Am. We remand Kapar's claim against MEA for proceedings not inconsistent with this opinion.

*So ordered.*

---

16. The same reasoning would apply to a diversity claim brought against any of the defendants under 28 U.S.C. § 1332 (1982). *Smith*, 452 F.2d at 802 ("If treaty jurisdiction under the Convention does not lie, federal jurisdiction under 28 U.S.C. § 1331(a), which permits cases *arising under* United States treaties, clearly cannot be established. Similarly, if the Convention precludes suit, our inquiry ceases without an examination of diversity jurisdiction under 28 U.S.C. § 1332(a)(2)....") (emphasis in original).