**Jackie PFLUG and Scott Pflug, Plaintiffs–Appellants,**

v.

**EGYPTAIR CORPORATION, a New York Corporation, Defendant–Appellee.**

**No. 1065, Docket 91–9008.**

United States Court of Appeals, Second Circuit.

Argued March 12, 1992.

Decided April 1, 1992.

Francis G. Fleming, New York City (Kreindler & Kreindler) for plaintiffs-appellants.

Christopher Carlsen, New York City (Condon & Forsyth) for defendant-appellee.

Before: OAKES, Chief Circuit Judge, WALKER, Circuit Judge, POLLACK, District Judge.[*]

MILTON POLLACK, Senior District Judge:

Plaintiffs, one of whom was a passenger on Egyptair, the national airline of Egypt, sustained injuries as a result of the hijacking of an international flight from Athens to Cairo. Both plaintiffs brought suit in the Eastern District of New York against the carrier's United States subsidiary, Egyptair Corp., which is not itself a carrier. Holding that the suit was subject to Article 28 of the Warsaw Convention on international air transportation,[1] the District Court, Thomas C. Platt, Chief Judge, dismissed the Complaint for want of treaty jurisdiction.

We affirm.

## BACKGROUND

Mrs. Pflug purchased a round-trip ticket in Athens for a flight from Cairo to Athens on Egyptair, the national airline of Egypt. During the return trip on November 23, 1985 on Egyptair Flight No. 648, terrorists

---

[*] The Honorable Milton Pollack of the United States District Court for the Southern District of New York, sitting by designation.

**1.** Convention for the Unification of Certain Rules Relating to International Transportation by Air, October 12, 1929, 49 Stat. 3000, T.S. No. 876 (1934), *reprinted in* 49 U.S.C. § 1502 (1976) (note).

took control of the aircraft and forced the pilot to land on the Island of Malta. While the aircraft was on the ground, the hijackers separated the American and Israeli passengers and began executing them. They forced Mrs. Pflug to exit the aircraft and shot her in the head while she was standing on a movable set of stairs immediately adjacent to the aircraft door. She fell to the ground onto the runway and lay there unattended, feigning death. After five hours, employees of Egyptair removed her and, when they discovered that she was alive, sent her to a hospital.

In 1987, the plaintiffs brought an action for personal injuries sustained by Mrs. Pflug during the hijacking against a wholly-owned subsidiary of Egyptair, called Egyptair Corporation ("Egyptair Corp."), that is incorporated in New York. Plaintiffs are citizens of Minnesota. The Complaint alleges that jurisdiction exists in the district court under the Warsaw Convention and under the court's diversity jurisdiction.

In its Answer, dated November 18, 1987, the defendant Egyptair Corp. admitted that it owned and operated the hijacked aircraft but denied that it was incorporated and domiciled in New York. On June 30, 1988, counsel for Egyptair Corp. submitted an affidavit to the court stating that the admission and the denial were both mistakes, caused by Egyptair's counsel's ignorance of the existence of the subsidiary "paper" New York corporation and its assumption that the party being sued was Egyptair, the Egyptian national airline.

On June 30, 1988, Egyptair Corp. moved to dismiss the Complaint for lack of subject matter jurisdiction pursuant to Fed. R.Civ.P. 12(b)(1) on the grounds that the United States does not qualify as one of the four fora specified in a provision of the Warsaw Convention placing limits on where suits under the Convention may be brought. Egyptair Corp. moved alternatively for summary judgment pursuant to Fed.R.Civ.P. 56 on the ground that the defendant Egyptair Corp. was not a carrier and did not operate the hijacked aircraft. The parties carried out discovery limited to the issue of whether the district court could exercise jurisdiction over the suit.

The District Judge granted the motion to dismiss on September 26, 1991 for lack of subject matter jurisdiction. The Court found, first, that the Warsaw Convention applied to all causes of action asserted in the Complaint. As a result, the plaintiffs could not base their action in the district court on diversity jurisdiction; their claims had to be asserted as authorized by the Convention or be dismissed. The Court further found that the provision of the Convention allowing plaintiffs to sue in the domicile of the carrier did not afford jurisdiction in the United States since the carrier was not domiciled here; its only domicile was in Egypt, and for purposes of the Convention, an airline has only one domicile.

## DISCUSSION

■ Suits by passengers injured in international air travel are exclusively governed by the Warsaw Convention; a treaty that created an absolute right to compensation for passengers but at the same time imposed a liability limit on the amount they could recover from an airline. Warsaw Convention, arts. 17, 22, 49 Stat. 3018, 3019. *In re Air Disaster at Lockerbie, Scotland on December 21, 1988*, 928 F.2d 1267, 1271 (2d Cir.), *cert. denied*, — U.S. ——, 112 S.Ct. 331, 116 L.Ed.2d 272 (1991). The Convention sets limitations on who may be sued by an injured passenger and where suit may be brought. *Smith v. Canadian Pacific Airways, Ltd.*, 452 F.2d 798, 800 (2d Cir.1971). Unless an action is brought in accordance with these limitations, the federal courts lack treaty jurisdiction under the Convention and jurisdiction over the subject matter if the suit fails. This Court has held that when an action is one that falls within the province of the Convention, and the Convention does not authorize suit in the jurisdiction in which the action is brought, "our inquiry ceases without an examination of diversity jurisdiction." *Id.* at 802. However, the Convention does not apply to all claims of injuries suffered in conjunction with inter-

national air travel; thus, as an initial matter this Court must determine whether the Convention applies to all of plaintiffs' claims. *Air France v. Saks,* 470 U.S. 392, 105 S.Ct. 1338, 84 L.Ed.2d 289 (1985).

1. *Whether or not the Warsaw Convention applies to all of plaintiffs' causes of action.*

■ Article 17 of the Convention provides that:

The carrier shall be liable for damage sustained in the event of the death or wounding of a passenger or any other bodily injury suffered by a passenger, if the accident which caused the damage so sustained took place on board the aircraft or in the course of any of the operations of embarking or disembarking.

49 Stat. 3018. Plaintiffs argue that the district court should not have dismissed their Complaint because the Convention only applies to "accidents" and hijacking does not necessarily constitute an "accident" for purposes of the Convention. They claim that according to *Saks,* 470 U.S. at 405, 105 S.Ct. at 1345, the district court should have submitted the question of whether Mrs. Pflug's injuries resulted from an "accident" to the trier of fact. The plaintiffs further claim that at least some of their causes of action also fall outside Article 17 in that they seek recovery for injuries that did not occur while Mrs. Pflug was on the aircraft or during the operations of embarking or disembarking the aircraft.

These efforts by plaintiffs to avoid the application of the Warsaw Convention are unavailing. We have clearly held that a hijacking qualifies as an accident under Article 17. In *Day v. Trans World Airlines, Inc.,* 528 F.2d 31 (2d Cir.1975), *cert. denied,* 429 U.S. 890, 97 S.Ct. 246, 50 L.Ed.2d 172 (1976), former Chief Judge Kaufman stated in regard to Article 17 that "[i]t is undisputed, moreover, that a terrorist attack is considered an 'accident' within the purview of these provisions," *id.* at 33. *Husserl v. Swiss Air Transport Co.,* 351 F.Supp. 702 (S.D.N.Y.1972), *aff'd,* 485 F.2d 1240 (2d Cir.1973) (*per curiam*), was cited as authority for the same ruling. *Id.*

Contrary to plaintiffs' argument, the holding of these cases in this regard has not been affected by *Saks,* 470 U.S. at 392, 105 S.Ct. at 1338. In *Saks,* the Supreme Court held that the plaintiff passenger's ear injury could not constitute an "accident" under Article 17 unless it resulted from "an unexpected or unusual event or happening that is external to the passenger." *Id.* at 405, 105 S.Ct. at 1345. The Court noted that if the evidence as to whether an event fell within this definition was contradictory, the question should go to the trier of fact. However, a hijacking does not present a question of whether the event is unusual and external to the passenger; it clearly falls within the definition of accident. The very language of the *Saks* opinion relied on by plaintiffs cites approvingly the rule that terrorist acts are "accidents." The Court stated that:

Th[e] definition [of accident] should be flexibly applied after assessment of all the circumstances surrounding a passenger's injuries. [citation omitted]. For example, lower courts in this country have interpreted Article 17 broadly enough to encompass torts committed by terrorists or fellow passengers. [citing *Day* [*v. Trans World Airlines, Inc.,* 528 F.2d 31 (2d Cir.1975)] and cases from other jurisdictions]. In cases where there is contradictory evidence, it is for the trier of fact to decide whether an "accident" as here defined caused the passenger's injury. See *DeMarines v. KLM Royal Dutch Airlines,* 580 F.2d 1193 (CA3 1978) (contradictory evidence on whether pressurization was normal).

*Id.* at 405, 105 S.Ct. at 1345.

■ Plaintiffs claim that some of Mrs. Pflug's injuries occurred on the tarmac and therefore did not "take place on board the aircraft or in the course of any of the operations of embarking or disembarking," but that is not relevant to the applicability of Article 17 to her case. Article 17 applies if the *accident* occurred in the aircraft or during the operations of embarking or dis-

embarking; it does not put any limitation on where the injuries can have occurred. The "accident" at issue in the instant case was the hijacking, and that hijacking took place on board the aircraft. *See People ex rel. Compagnie Nationale Air France v. Giliberto,* 74 Ill.2d 90, 101, 23 Ill.Dec. 106, 110, 383 N.E.2d 977, 981 (1978), *cert. denied,* 441 U.S. 932, 99 S.Ct. 2052, 60 L.Ed.2d 660 (1979).

2. *Whether suit was properly brought in the United States under the Convention.*

■ Article 17 states that "[t]he carrier shall be liable" to injured passengers. The question in this case is whether Egyptair Corp., the defendant against which the plaintiffs chose to proceed, is a "carrier" involved in the occurrences at issue. This question is obviously antecedent to an examination of whether the United States is one of the jurisdictions in which Article 28, the forum-limiting provision of the Convention, allows the plaintiffs to proceed against the carrier. Article 28 states that:

(1) An action for damages must be brought, at the option of the plaintiff, in the territory of one of the High Contracting Parties, either before the court of the *domicile* of the carrier or of his *principal place of business,* or where he has a *place of business through which the contract has been made,* or before the court at the *place of destination.*

(2) Questions of procedure shall be governed by the law of the court to which the case is submitted.

49 Stat. 3020 (emphasis added).

Plaintiffs do not dispute that Egypt is the carrier's principal place of business, its domicile and the place of destination of the flight, and Athens, Greece the place where the contract was made with the plaintiffs. However, they argue that the district judge erred in holding that the carrier did not also have a domicile in the United States. They point out that under United States law a corporation's place of incorporation is its domicile, and they claim, irrelevantly, that the defendant's domicile was in New York; but the defendant was not the carrier, directly or indirectly, nor was the carrier named as a defendant.

Plaintiffs attempted to assert that Egyptair Corp. is not a separate corporation from Egyptair, the national airline of Egypt; rather, they argue, Egyptair and Egyptair Corp. are a single corporation, and that corporation was clearly the airline that operated Flight 648. They claim that Egyptair reincorporated itself in the United States by organizing a subsidiary corporation and thus has two places of incorporation. They conclude that even if the corporation Egyptair/Egyptair Corp. has an Egyptian domicile in addition to its United States domicile, the district court erred in dismissing the case because the Convention does not preclude multiple domiciles, and under United States law a corporation that is incorporated in two different states is considered to have a domicile in both states for jurisdictional purposes.

The district court found that Egyptair and Egyptair Corp. were in fact two separate corporations. The evidence produced in discovery strongly supports that finding, without contradiction. Egyptair is the national airline of Egypt. It existed for nearly twenty years before the incorporation of Egyptair Corp.; Egyptair has been conducting business operations as an international air carrier since at least 1962, while Egyptair Corp. is a set of books created in 1981. The two corporations have different principal places of business: Egyptair's principal place of business is in Egypt and it conducts its worldwide operations from Egypt, while Egyptair Corp.'s Certificate of Incorporation states that its principal place of business is in New York. Furthermore, the same plaintiffs conceded that Egyptair and Egyptair Corp. were separate corporations in related litigation in the Southern District of New York. *Pflug v. Rezaq,* 88 Civ. 8804, 1989 WL 38126 (S.D.N.Y. Apr. 12, 1989) (opinion and order of remand states that "neither side disputes the existence of two entities: Egyptair Corporation, a New York corporation ("Egyptair Corp.") and Egyptair, Inc., an Egyptian corporation ("Egyptair Inc.")").

It is true that federal courts have held in certain cases that a corporation that incorporates in two jurisdictions is deemed to be domiciled in both locations. The cases cited by plaintiffs all involve the limits of diversity jurisdiction. *See, e.g., Seavey v. Boston & Marine R.R.*, 197 F.2d 485 (1st Cir.1952); *Lang v. Colonial Pipeline Co.*, 266 F.Supp. 552, 558 (E.D.Pa.), *aff'd*, 383 F.2d 986 (3d Cir.1967) ("If a corporation happens to be incorporated in more than one state, it is a citizen of each, thus further restricting the number of federal courts in which suit can be instituted on the basis of diversity."). At any rate, this rule does not apply in this case. Egyptair was not reincorporated in New York. Egyptair Corp. was not the old corporation, it was separately incorporated; Egyptair and Egyptair Corp. are two distinct corporations, not one corporation incorporated in both Egypt and the United States. Egyptair's domicile in Egypt was never moved from Cairo. Having concluded that the plaintiffs cannot succeed with their dual domicile argument, we need not reach the question of whether, for the purposes of Article 28 of the Convention, a corporation can have more than one domicile.

In addition, the evidence produced in discovery unequivocally indicates that Egyptair Corp., the sole defendant in this action, was neither a carrier nor the carrier that operated the aircraft on which Mrs. Pflug was a passenger when she suffered injuries. Egyptair Corp. did not engage to transport Mrs. Pflug. In fact, Egyptair Corp. does not own or operate any aircraft at all, does not own any assets, does not have any employees, and does not even have a CAB permit to operate aircraft. Mrs. Pflug did business with Egyptair, the national airline of Egypt, not Egyptair Corp., its subsidiary. Egyptair sold Mrs. Pflug her ticket for an Egyptair flight. Egyptair Corp. was not in any way involved in the occurrences at issue in this case.

According to the terms of the Convention, injured passengers have a cause of action against the airline that is "the carrier" involved in the accident that caused the passenger's injuries. *See Kapar v. Ku-*

*wait Airways Corp.*, 845 F.2d 1100 (D.C.Cir.1988). Cases interpreting Article 17 and other articles of the Convention have established that only the airline that actually transports the injured passenger can be held liable as "the carrier." *Id.* at 1103; *Stanford v. Kuwait Airlines, Corp.*, 705 F.Supp. 142, 143 (S.D.N.Y.1989) (Article 28); *Stanford v. Kuwait Airways, Corp.*, 648 F.Supp. 1158, 1163 (S.D.N.Y. 1986) (Article 30).

In *Kapar*, the injured passenger brought suit in the District of Columbia against Kuwait Airways, the corporation that operated the hijacked flight on which Kapar was injured, and against Pan American World Airways, which had sold Kapar his ticket in Yemen as agent for Kuwait Airways. The district court dismissed Kapar's claims against both corporations on the ground that it lacked treaty, and hence subject matter, jurisdiction over them under Article 28 of the Warsaw Convention. In regard to Kuwait Airways, the district court found that the United States was not one of the four fora included in Article 28 as those in which jurisdiction could be exercised over Kuwait Airways. Kapar did not challenge this finding on appeal. Rather, Kapar argued that Pan Am should be deemed "a carrier" liable under the Convention for his injuries.

Examining the language of a number of different provisions of the Convention, the Court of Appeals for the District of Columbia found that liability was closely associated with the operation of the aircraft involved in the accident and that this indicated that only the carrier that owned and operated the aircraft could be liable. The Court stated that:

> Although the term "carrier" is not defined in the Convention, the manner in which it is employed, particularly in the chapter titled "Liability of the Carrier," makes clear that the Convention's drafters were referring only to those airlines that actually transport passengers or baggage ("actual carriers"). *See Air France v. Saks*, 470 U.S. 392, 397–97, 105 S.Ct. 1338, 1340–41, 84 L.Ed.2d 289 (1985) ("The analysis must begin ...

with the text of the treaty and the context in which the written words are used."). In Article 17, for example, the "carrier" is deemed liable for death or bodily injury "if the accident which caused the damage so sustained *took place on board the aircraft or in the course of any of the operations of embarking or disembarking*" (emphasis added). Likewise, in article 18(1), the "carrier" is deemed liable for damage to any checked baggage or other goods "if the occurrence which caused the damage so sustained *took place during the transportation by air*" (emphasis added). In Article 30, moreover, the drafters even precluded the possibility that the actual carrier for one leg of a scheduled multi-leg trip could be held liable for injuries suffered on another airline during a different leg of the trip. When "successive carriers" provide transportation of this sort, a passenger "can take action *only against the carrier who performed the transportation during which the accident ... occurred*" (emphasis added).

*Kapar*, 845 F.2d at 1103. Thus, because the Convention requires that an injured passenger bring suit against "the carrier," and Pan Am was not the carrier, the Court of Appeals affirmed the district court's dismissal of Kapar's claims against Pan Am for lack of subject matter jurisdiction. Similarly in this case, plaintiffs' Complaint was properly dismissed because Egyptair Corp. did not transport the injured passenger and thus is not "the carrier."

## CONCLUSION

The Warsaw Convention provides that a carrier that transports passengers injured on an international flight is liable for injuries in the event that an accident occurs on board the aircraft or in the process of embarking or disembarking the aircraft. The Convention applies to all of plaintiffs' claims, which involve injuries that resulted from a hijacking, an event that qualifies as an "accident" for purposes of the Convention. Because plaintiffs brought suit against a corporation that was not the carrier that transported appellant Mrs.

Pflug on the hijacked flight, the district court properly dismissed the plaintiffs' claims for lack of subject matter jurisdiction.

Affirmed.