Ziming SHEN and Xiaoping
Fan, Plaintiffs,

v.

JAPAN AIRLINES and Japan
Immigration Bureau,
Defendants.

93 Civ. 1501 (LLS).

United States District Court,
S.D. New York.

April 12, 1994.

Order denying Motion to Amend
May 23, 1994.

Ziming Shen, Xiaoping Fan, Staten Island, NY, pro se.

Condon & Forsyth, New York City (Desmond T. Barry, Jr., of counsel), for Defendant Japan Airlines.

Edwards & Angell, New York City (Alfred R. Paliani, of counsel), Hogan & Hartson, Washington, DC (William A. Bradford, Jr., Pierre M. Donahue, of counsel), for Defendant Japan Immigration Bureau.

## MEMORANDUM AND ORDER

STANTON, District Judge.

Plaintiffs Ziming Shen and Xiaoping Fan sued defendants Japan Airlines ("JAL") and Japan Immigration Bureau ("JIB") for damages allegedly sustained when they were refused entry into Japan at Tokyo's Narita Airport, and deported to Shanghai, China.

Defendant JAL moves, pursuant to Fed. R.Civ.P. 12(b)(1), to dismiss the complaint against it for lack of subject matter jurisdiction. Alternatively, JAL moves for summary judgment pursuant to Fed.R.Civ.P. 56.

Defendant JIB moves to dismiss the complaint for insufficient service, and for lack of personal and subject matter jurisdiction.

### Claims Against JAL

1. *Applicability of the Warsaw Convention* [1]

The Court of Appeals has stated:

Suits by passengers injured in international air travel are exclusively governed by the Warsaw Convention.... The Con-

---

[1] Convention for Unification of Certain Rules Relating to International Transportation by Air, Oct. 12, 1929, 49 Stat. 3000, T.S. No. 876, 137 L.N.T.S. 11 (1934), *reprinted in* 49 U.S.C.App. § 1502 (note) ("Convention").

vention sets limitations on who may be sued by an injured passenger and where suit may be brought. Unless an action is brought in accordance with these limitations, the federal courts lack treaty jurisdiction under the Convention and jurisdiction over the subject matter [o]f the suit fails.... However, the Convention does not apply to all claims of injuries suffered in conjunction with international air travel; thus, as an initial matter this Court must determine whether the Convention applies to all of plaintiffs' claims.

*Pflug v. Egyptair Corp.*, 961 F.2d 26, 28–29 (2d Cir.1992) (citations omitted).

Article 1(1) of the Convention states: "This convention shall apply to all international transportation of persons, baggage, or goods performed by aircraft for hire." Article 1(2) of the Convention defines "international transportation" as

any transportation in which, according to the contract made by the parties, the place of departure and the place of destination ... are situated either within the territories of two High Contracting Parties, or within the territory of a single High Contracting Party, if there is an agreed stopping place within a territory subject to the sovereignty, suzerainty, mandate or authority of another power, even though that power is not a party to this convention.

■ In the transportation of passengers, the relevant transportation contract is generally the passenger ticket. *See Rabinowitz v. Scandinavian Airlines*, 741 F.Supp. 441, 443 (S.D.N.Y.1990). Plaintiffs' tickets, purchased from JAL, provided for round-trip travel from Shanghai to Tokyo originating in Shanghai. Both China and Japan are High Contracting Parties to the Convention. Office of the Legal Advisor, U.S. Dep't of State, Pub. No. 9433, *Treaties in Force* 297 (1993). Thus, plaintiffs' travel was "international transportation" as that term is defined in the Convention.

The complaint states that

defendants false-arrested and malicious-prosecuted plaintiffs by keeping them in a jail for over fifteen hours without any food and illegally searched them and seized their passports and luggage and then forced them back to Shanghai, China. As a result, plaintiffs were delayed returning to the United States and suffered great pain of body and mind, and incurred more expenses for traveling and medical attention, and loss of time from work.

(Compl. ¶ 5.)

The Convention, in Article 17, states:

The carrier shall be liable for damage sustained in the event of the death or wounding of a passenger or any other bodily injury suffered by a passenger, if the accident which caused the damage so sustained took place on board the aircraft or in the course of any of the operations of embarking or disembarking.

The Supreme Court, interpreting the meaning of "accident" in Article 17, concluded that "liability under Article 17 of the Warsaw Convention arises only if a passenger's injury is caused by an unexpected or unusual event or happening that is external to the passenger," *Air France v. Saks*, 470 U.S. 392, 405, 105 S.Ct. 1338, 1345, 84 L.Ed.2d 289 (1985), and stated that "This definition should be flexibly applied after assessment of all the circumstances surrounding a passenger's injuries." *Id.* Plaintiffs' injuries, as described in the complaint, appear to have been caused by unusual events (prolonged detention without food, search and seizure), external to them.

Moreover, the injuries appear to have been caused during "the operations of embarking".[2] The Court of Appeals has adopted a flexible approach in the interpretation of the language of Article 17, and has stated that:

[C]onsistent with a flexible approach, several factors should be assessed to determine whether a passenger was "in the course of any of the operations of embarking". The factors to be considered are: (1) the activity of the passengers at the time of the accident; (2) the restrictions, if any,

2. Because the plaintiffs were in the custody of JAL personnel after they were denied entry into Japan, it is unnecessary to consider whether plaintiffs had completed the "operations of disembarking" prior to that point.

on their movement; (3) the imminence of actual boarding; and (4) the physical proximity of the passengers to the gate. *Buonocore v. Trans World Airlines, Inc.*, 900 F.2d 8, 10 (2d Cir.1990). Plaintiffs, after being denied entry into Japan by Japanese immigration officials, were detained for fifteen hours by JAL personnel before being placed on the next available JAL flight to Shanghai. They were not permitted to leave the custody of JAL personnel, nor were they able to mingle with other travelers bound for Shanghai. The detention occurred "at a designated Narita Airport facility." (Bloom Aff. ¶ 5.) Application of the four factors enumerated by the Court of Appeals compels the conclusion that plaintiffs' injuries occurred during "the operations of embarking" the JAL flight that returned them to Shanghai.

Finally, Article 19 of the convention renders carriers liable for damages caused by delay: "The carrier shall be liable for damage occasioned by delay in the transportation by air of passengers, baggage, or goods."

For the reasons stated above, all of plaintiffs' claims are governed by the Convention.

### 2. Permissible Fora for Suit

Article 28(1) of the Convention specifies four fora in which an action for damages may be brought: (1) the "domicile of the carrier"; (2) the carrier's "principal place of business"; (3) the carrier's "place of business through which the contract has been made"; or (4) the "place of destination".

### a. JAL's Domicile and Principal Place of Business

The plaintiffs do not dispute that JAL is a Japanese corporation, with its headquarters and principal place of business in Tokyo, Japan. (Bloom Aff. ¶ 2). Thus, JAL's domicile is in Japan. *See Smith v. Canadian Pacific Airways, Ltd.*, 452 F.2d 798, 802 (2d Cir.1971) (carrier's domicile is its place of incorporation); *Wyler v. Korean Air Lines Co., Ltd.*, 928 F.2d 1167, 1175 (D.C.Cir.1991) (noting that U.S. courts have "routinely assumed" that a carrier's domicile for the purposes of the Convention is its place of incorporation, while "[s]cholars of comparative law have observed that domicile generally refers

to a corporation's headquarters" and interpreting "the term 'domicile' in Article 28(1) of the Warsaw Convention as a corporation's headquarters"); *In re Air Disaster Near Cove Neck, New York*, 774 F.Supp. 718, 720–22 (E.D.N.Y.1991) ("In this Circuit, an air carrier is generally considered to be domiciled in the country of its incorporation"; although courts in the Second Circuit have found "corporations to be domiciled at their place of incorporation" for the purposes of the Convention, the French word *domicile* refers to corporation's headquarters under French law); *In re Air Disaster Near Cove Neck, New York*, 774 F.Supp. 725, 727, 728 (E.D.N.Y.1991) (same).

### b. Place of Business Where Contract Made

■ The carrier's "place of business through which the contract has been made" is generally either where the ticket was purchased or where it was issued. *See Campbell v. Air Jamaica, Ltd.*, 863 F.2d 1, 2 (2d Cir.1988) (reversing district court's finding that ticket was purchased in Jamaica where plaintiff submitted affidavit stating that ticket was purchased on his behalf in New York by third party, and where ticket may have been originally issued in Philadelphia); *Benjamins v. British European Airways*, 572 F.2d 913, 915 (2d Cir.1978) (place where contract made was place of purchase), *cert. denied*, 439 U.S. 1114, 99 S.Ct. 1016, 59 L.Ed.2d 72 (1979); *Smith*, 452 F.2d at 803 (where ticket purchased in Vancouver, and "there appear to have been no arrangements whatsoever between Vancouver and the [carrier's] United States office for ticketing or booking, no reading of the facts in this case can yield the conclusion that the United States was the place 'through which the contract has been made' "); *In re Air Disaster Near Cove Neck, New York*, 774 F.Supp. 732, 733–34 (E.D.N.Y.1991) (rejecting carrier's claim that place where contract is made is always the place of issue; ticket purchased in New York gave court treaty jurisdiction in New York, even though ticket issued in Columbia).

Plaintiffs' original tickets were issued in China, while their replacement tickets were issued in Japan. Plaintiffs argue that the contract was actually made in New York, because they purchased the JAL tickets in Shanghai "through American Express." Their affirmation states:

> Around April, 23, 1992, plaintiff Ziming Shen first through phones, then went to a Japan Airlines' office in Shanghai, China to inquiry about the possibilities to connect the Northwest Airlines' flight number 18 on April 26, 1992 by taking a Japan Airlines' flight. A Japan Airlines' agent let the plaintiffs to show her the travel documents and said it is China's regulation that a passenger should have proper travel documents before the airlines company can sell tickets for travelling outside China. After the plaintiff showed her the passport and U.S. Alien Registration Card (the Green Card), the agent suggested that the plaintiff could buy tickets on JAL's flight No. 792 on April 25, 1992. When plaintiff asked if plaintiffs could enter Japan, the agent said plaintiffs could enter Japan and stay in Japan within 72 hours by applying visas after arriving in Tokyo. The agent encouraged the plaintiffs to buy the return tickets and said the tickets could be refunded fully if plaintiffs didn't use them, the refund could be obtained in JAL's New York office. Plaintiff Ziming Shen brought two tickets from Shanghai to Tokyo on April 25, 1992 and two tickets from Tokyo to Shanghai on April 27. The tickets were purchased by American Express and the real money transaction for tickets were in New York. The round trips were within 72 hours as suggested.

(Plaintiffs' Affirmation of 8/22/93, at ¶ 3) (citations omitted). The crux of plaintiffs' argument appears to be that because the tickets were purchased with an American Express card, the contract was not made until the charge was posted to their account in New York. However, the use of an American Express card in Shanghai does not render New York the place of purchase simply because the charge was eventually posted there. Moreover, the plaintiffs do not dispute that the original tickets were issued in Shanghai.

Construing plaintiffs' papers liberally, *see Haines v. Kerner*, 404 U.S. 519, 520–21, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972) (per curiam), and construing their opposition papers as part of the complaint,[3] the court nonetheless concludes that all of the contracts were made either in China or Japan.

### c. Destination

"[F]or purposes of the Warsaw Convention, the 'destination' of a round-trip journey is the same as the starting point...." *Petrire v. Spantax, S.A.*, 756 F.2d 263, 265 (2d Cir.), *cert. denied*, 474 U.S. 846, 106 S.Ct. 136, 88 L.Ed.2d 112 (1985); *Campbell*, 863 F.2d at 2 ("destination" of ticket for round-trip travel between Jamaica and New York, originating in Jamaica, was Jamaica). Thus, the destination of plaintiffs' round-trip tickets was Shanghai, China. Although plaintiffs were reissued tickets in Japan for their compulsory return to China (Bloom Aff. ¶¶ 5–7), the destination of those reissued tickets, like the original tickets, was Shanghai.

Plaintiffs argue that their ultimate destination was New York, pointing to Article 1(3) of the Convention, which states:

> Transportation to be performed by several successive air carriers shall be deemed, for the purposes of this convention, to be one undivided transportation, if it has been regarded by the parties as a single operation, whether it has been agreed upon under the form of a single contract or a series of contracts....

However, "Under Article 1(3) all parties—the successive carriers as well as the passenger—must regard the ... flights as a 'single operation'". *In re Air Crash Disaster at Warsaw, Poland, on March 14, 1980*, 748 F.2d 94, 96 (2d Cir.1984). Plaintiffs' travel to New York was through another carrier, Northwest Airlines. Those tickets were pur-

---

**3.** *See Gill v. Mooney*, 824 F.2d 192, 195 (2d Cir.1987) (in reviewing district court's dismissal of *pro se* plaintiff's § 1983 claim, court considered plaintiff's affidavit submitted in opposition to defendant's motion to dismiss); *Lucas v. New York City*, 842 F.Supp. 101, 104 n. 2 (S.D.N.Y. 1994); *Donahue v. United States Dep't of Justice*, 751 F.Supp. 45, 49 (S.D.N.Y.1990).

chased by plaintiffs in New York at a different time. Nothing before the court supports the contention that Northwest would have considered the JAL flight to Tokyo and its own flight to New York "a single operation."

### d. Conclusion

■ All four fora in which plaintiffs may sue JAL under the Convention are in either Japan or China. The Court of Appeals "has held that when an action is one that falls within the province of the Convention, and the Convention does not authorize suit in the jurisdiction in which the action is brought, 'our inquiry ceases without an examination of diversity jurisdiction.'" *Pflug,* 961 F.2d at 28–29 (citations omitted).

Plaintiffs' complaint against JAL is dismissed for lack of jurisdiction.

### 3. *Act of State Doctrine*

■ Even if the court had jurisdiction over plaintiffs' claims against JAL, JAL would be entitled to summary judgment under the act of state doctrine. "The act of state doctrine ... requires that ... the acts of foreign sovereigns taken within their own jurisdictions shall be deemed valid." *W.S. Kirkpatrick v. Environmental Tectonics,* 493 U.S. 400, 409, 110 S.Ct. 701, 707, 107 L.Ed.2d 816 (1990). Thus, "The act of state doctrine precludes the courts of this country 'from inquiring into the validity of the public acts a recognized foreign power committed within its own territory.'" *Galu v. Swissair: Swiss Air Transport Co., Ltd.,* 873 F.2d 650, 653 (2d Cir.1989) (quoting *Banco Nacional de Cuba v. Sabbatino,* 376 U.S. 398, 401, 84 S.Ct. 923, 926, 11 L.Ed.2d 804 (1964)). A party may assert the act of state doctrine where its conduct has been compelled by a foreign government. *O.N.E. Shipping Ltd. v. Flota Mercante Grancolombiana, S.A.,* 830 F.2d 449, 453 (2d Cir.1987), *cert. denied,* 488 U.S. 923, 109 S.Ct. 303, 102 L.Ed.2d 322 (1988).

■ Plaintiffs sustained their alleged injuries during their detention by JAL personnel, and when they were placed involuntarily on a JAL flight from Tokyo to Shanghai. However, JAL's detention of plaintiffs, confiscation of their travel documents, and placement of plaintiffs on the next available JAL flight to Shanghai were actions directed by Japanese immigration authorities. (Bloom Aff. ¶¶ 5, 8.) Plaintiffs do not dispute that these directions by Japanese government officials were acts of state. Because the court would be required to find that the acts of the Japanese immigration authorities were invalid in order to find misconduct on the part of JAL, the act of state doctrine requires dismissal of the claims against JAL. *See Galu v. Swissair: Swiss Air Transport Co., Ltd.,* 734 F.Supp. 129, 133–34 (S.D.N.Y.), *aff'd,* 923 F.2d 842 (2d Cir.1990).

### Claims Against JIB

#### 1. *Subject Matter Jurisdiction over JIB*

■ "The FSIA [Foreign Sovereign Immunities Act] provides the 'sole basis' for obtaining jurisdiction over a foreign sovereign in the United States. Under the FSIA, a 'foreign state shall be immune from the jurisdiction of the courts of the United States and of the states' unless one of several statutory exceptions applies." *Commercial Bank of Kuwait v. Rafidain Bank,* 15 F.3d 238, 240–41 (2d Cir.1994) (citations omitted). Plaintiffs have pointed to no provision of the FSIA that would permit suit against JIB, and none appears to apply. *See Kline v. Kaneko,* 685 F.Supp. 386 (S.D.N.Y.1988) (FSIA provided no exception to foreign sovereign immunity applicable to complaint alleging kidnapping, false imprisonment, and illegal search and seizure by Mexican government official). Accordingly, the court lacks subject matter jurisdiction over plaintiffs' claims against JIB.

#### 2. *Personal Jurisdiction Over JIB*

■ Plaintiffs allege that JIB is "a Japan Government agency", (Compl. ¶ 3), and claim to have served JIB by mail pursuant to 28 U.S.C. § 1608(a)(3).[4] (Plaintiffs' Affirmation,

---

**4.** Although plaintiffs allege that JIB is a Japanese government agency, the FSIA defines an "agency or instrumentality of a foreign state" as

[A]ny entity—

(1) which is a separate legal person, corporate or otherwise, and

undated, at ¶ 1, Exs. A & B.) Although JIB additionally disputes that it received the "notice of suit" required under § 1608(a)(3), it is undisputed that the service documents were mailed to the "Japan Dept. of Justice, Immigration Bureau", rather than "to the head of the ministry of foreign affairs" of Japan, as required by the statute. *See* 28 U.S.C. § 1608(a)(3). Plaintiffs' failure to comply with the service requirements of the FSIA mandates dismissal of the complaint against JIB. *See Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co., Kommanditgesellschaft v. Navimpex Centrala Navala,* 989 F.2d 572, 579 (2d Cir.1993) (jurisdiction under the FSIA requires both subject matter jurisdiction and proper service of process).

■ Finally, even if plaintiffs' service on JIB had been proper, personal jurisdiction may not be had over JIB in the absence of sufficient minimum contacts to satisfy constitutional due process requirements. The Court of Appeals has stated, " 'the [FSIA] cannot create personal jurisdiction where the Constitution forbids it.' Consequently, in addition to each finding of personal jurisdiction made pursuant to the FSIA, we make a due process scrutiny of the court's power to exercise its authority over the defendant." *Seetransport Wiking Trader,* 989 F.2d at 580 (alteration in original) (citations omitted) (quoting *Texas Trading v. Federal Republic of Nigeria,* 647 F.2d 300, 308 (2d Cir.1981), *cert. denied,* 454 U.S. 1148, 102 S.Ct. 1012, 71 L.Ed.2d 301 (1982)). Plaintiffs have alleged no JIB contacts with the United States. JIB avers that it "conducts no commercial activities at all in the United States", that it "maintains no offices outside of Japan, and none of its officials or employees conduct any commercial activities within the United States on behalf" of it. (Sakai Aff. ¶¶ 4, 5). Consequently, JIB does not have sufficient

minimum contacts with the United States to permit this court to exercise jurisdiction over it.

### Conclusion

All claims are dismissed for lack of jurisdiction.

The clerk is directed to enter judgment accordingly.

### MEMORANDUM ENDORSEMENT

Plaintiffs move pursuant to Fed.R.Civ.P. 52(b) and 59 for an order amending the judgment entered against them dated April 15, 1994. The clerk entered that judgment pursuant to this court's Memorandum and Order dated April 12, 1994.

Plaintiffs complain that (1) the Warsaw Convention should not govern their claims because "[t]he plaintiffs' staying overnight in a hotel which is several miles from the terminal gate cannot be considered 'the operations of embarking' ", (Notice Mot. at 2); and (2) the act of state doctrine should not shield Japan Airlines ("JAL") from liability because the deportation order issued by Japan Immigration Bureau ("JIB"), if there was one, did not direct JAL to "torture and mistreat plaintiffs". (Notice Mot. at 2.) Plaintiffs also seek discovery concerning the location of their detention and the substance of JIB's order to JAL.

In its Memorandum and Order, the court applied the "flexible approach" endorsed by the Court of Appeals in *Buonocore v. Trans World Airlines, Inc.,* 900 F.2d 8 (2d Cir. 1990), to determine whether plaintiffs' injuries had occurred during "any of the operations of embarking". After considering the four factors enumerated in *Buonocore, see* 900 F.2d at 10, the court concluded that plaintiffs' injuries had occurred during "the

---

(2) which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, and

(3) which is neither a citizen of a State of the United States as defined in section 1332(c) and (d) of this title, nor created under the laws of any third country.

28 U.S.C. § 1603(b). Because JIB "has no independent existence apart from the Government of Japan, and is staffed entirely by officials and employees of the Government of Japan", (Sakai Aff. ¶ 3), JIB is not a "agency" of Japan under the FSIA. This inaccuracy is of no moment, however, because plaintiffs claim service was effected pursuant to 28 U.S.C. § 1608(a)(3), which governs service on "a foreign state or political subdivision of a foreign state".

operations of embarking". *See Ziming Shen v. Japan Airlines*, 918 F.Supp. at 688–89 (S.D.N.Y. Apr. 12, 1994). The court determined that plaintiffs' claims were governed by the Warsaw Convention, and that the court lacked jurisdiction over those claims. *Id.* at 687–91.

Plaintiffs point to no matters or controlling decisions overlooked by the court; they merely disagree with the court's conclusion. Accordingly, plaintiffs' motion is denied.[1]

Plaintiff's request for discovery based on the contentions raised in the motion is also denied.

So ordered.

Dated: New York, New York
    May 23, 1994

---

**1.** Plaintiff's second ground for relief does not justify a different result. Even if, as plaintiffs contend, the act of state doctrine does not shield JAL from liability to plaintiffs, their motion nonetheless would be denied because their claims against JAL were dismissed by the court for lack of jurisdiction.