### JAMES HUGHES, Inc., v. CHARLES DREIFUS CO.
### No. 320.

Circuit Court of Appeals, Second Circuit.
April 5, 1937.

**10**

Kirlin, Campbell, Hickox, Keating & McGrann, of New York City (Delbert M. Tibbetts, of New York City, of counsel), for appellant.

Lynch, Hagen & Atkins, of New York City (Anthony V. Lynch, Jr., of New York City, of counsel), for appellee.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

L. HAND, Circuit Judge.

This is an appeal from a decree in the admiralty upon a libel filed by the owner to recover the hire of a barge under a charter party, executed by the parties to the suit on January 15, 1936. The charter party was made by taking a printed form for a voyage charter and typing in certain passages; the result being a farrago hard to decipher. An abstract of its contents is as follows: The owner agreed to charter the barge from "alongside dock Hartford, Conn. to alongside steamer New York Harbor," for a "minimum cargo of 600 gross tons of scrap iron"; the freight to be calculated at "90¢ per gross ton, on outturn weight." Beneath the printed provision for lay days was the following: "Thirty (30) DAYS free time will be allowed on this boat, time starting to-day, January 15th. This free time includes the days that are to be used in loading, number of days while boat is in transit, and the number of days used while barge is waiting for ship in New York Harbor; demurrage will start on February 15th, 1936, at the rate of:" All we have quoted so far was typed; but after the colon the printed form read as follows: "5. Also, that for each and every day's detention by default of said party of the second part, or Agent, —— per day, day by day, and pro rata part of a day shall be paid by said party of the second part, or Agent."

In the blank were typed the words, "$15. per day." Finally beneath the liberties clause, the following words were typed: "Free time to start Wednesday, January 15th, 1936, and to expire February 14th, 1936." The printed form contained exceptions in the following language: "3. The act of God, Restraint of Princes and Rulers, the Country's Enemies, fire and all and every other dangers and accidents of the seas, rivers and navigation of what nature and kind soever during the said voyage, riots, strikes, fire, floods always mutually excepted."

The owner tendered the barge at Hartford on January 16th; the charterer completed lading on the 18th. That evening she was moved to another berth in Hartford, to await a tug which came on the following day; during the night there was a heavy snowstorm with severe cold which continued until March 28th, when for the first time it became possible to tow her to New York, as agreed in the charter party. She arrived there on April 1st and was discharged on the 4th. The District Court held the charterer for the stipulated freight, estimated on the gross tonnage, together with $15 demurrage for each day after February 14th until April 4th. The charterer unsuccessfully argued that it should not be charged with delays not occasioned by its "default"; and as a second defense that even though otherwise liable, the exceptions excused it, because the weather conditions were either "an act of God" or one of the "dangers and accidents of * * * rivers."

The first typed matter in the charter party was, it is true, consonant with a voyage charter; it undertook to tow the barge from Hartford to New York at a fixed rate. A voyage charterer's duties are limited by time—"lay days"—since otherwise the owner would be at his mercy; these measure the required despatch in lading and discharging, and usually damages for a breach are liquidated by a demurrage clause, like clause "5" here. But there were no "lay days" in this charter; in their place the "free time" clause was inserted, which fixed thirty days for the whole venture—the lading, the voyage, waiting for a vessel in New York, and the discharge. That was consistent only with a time charter; and the same purpose was further manifested by the "demurrage" clause which in effect extended the charter at $15 a day. There could have been no question about all this, if the demurrage rate had been inserted in

the typed words just after the colon, and had not instead been put into clause 5, which made "demurrage" depend upon the charterer's "default." It is possible theoretically to conceive of the "free time" as distributed between the parties, giving the owner a reasonable time to tow the barge from Hartford to New York, and the charterer the rest for lading, waiting in New York and discharging. In that event the charterer would not be in "default" unless it had used more than its own share; it did in fact use only ten days all told and twenty days was much more than a reasonable time to tow the boat. So viewed the charterer was never in "default." It seems to us, however, that the absence of any such express division of the period makes this an artificial construction, when there is another and more reasonable one to adopt; that is, that the charterer undertook to deliver the barge at New York on February 15th. True, it made no express covenant to do this, but the parties clearly meant the tonnage rate to cover only thirty days; and the charterer was then to redeliver the barge or pay the demurrage. Failure to deliver would seem to be the "default" intended, provided of course the delay was not due to the owner's failure to tow the barge with proper despatch. The result was to impose the risk of delay on the owner for the first thirty days, and upon the charterer for anything further.

The remaining question is whether the charterer was excused from this covenant by the exceptions for acts of God and accidents of rivers. We may take it arguendo that a heavy snowstorm or frost is an "act of God" which will excuse a common carrier. Cormack v. New York, N. H. & H. R. Co., 196 N.Y. 442, 90 N.E. 56, 24 L.R.A.(N.S.) 1209, 17 Ann.Cas. 949. Apparently it is not an "accident" which excuses a private carrier. Fenwick v. Schmalz, L.R. 3 C.P. 313. Perhaps it is not an "act of God" for a private carrier. However that may be, the exceptions here are of two classes: First, those which must occur "during the said voyage"; next, those which may occur at any time. An "act of God" and "accidents of rivers" are in the first class. This same distinction between the voyage, and what may happen before it, appears in the engagement of the charterer to pay the owner "for the use of the vessel during the voyage"; "lay days" are not considered part of the voyage. The detention in the case at bar was after the barge was laded, but before she broke ground upon her voyage. True, she had been shifted late in the afternoon from one berth at Hartford to another, but the tug did not come till the next day. Indeed, it is the charterer's position on this appeal that the voyage had not begun. If so, it did not begin until March 28th, and at the agreed time for delivery—February 15th—it was still in the future, and the exceptions had not gone into effect. This is indeed a strict interpretation of the language, but the truth is that the paramount intent of the parties was to make a time charter; to give the barge to the charterer free for thirty days with demurrage thereafter. In such a charter the charterer accepts the risk of detentions not otherwise provided for.

Decree affirmed.